■ In the Matter of AUGUSTIN ENAW, Petitioner, v MICHAEL DOWLING, as Commissioner of the New York State Department of Social Services, et al., Respondents. [632 NYS2d 715] —Crew III, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Social Services which, *inter alia*, excluded petitioner from participation in the Medicaid program for five years.

Petitioner is a licensed physician who, at all times relevant to this proceeding, was a participating provider in the Medicaid program. Respondent Department of Social Services conducted an audit of petitioner's records with respect to prescriptions written and laboratory tests ordered by petitioner for the period June 6, 1988 through December 11, 1989. A draft audit report was issued, indicating a projected disallowance of approximately $538,000 based upon a finding that petitioner had engaged in "unacceptable practice[s]" within the meaning of 18 NYCRR 515.2 (b). The Department ultimately issued a final notice of agency action advising petitioner that he was excluded from participation in the Medicaid program for five years and ordering him to make restitution in the amount of $451,942, plus interest. In so doing, the Department disallowed 28 of the 50 ordered services sampled during the course of the audit.

An administrative hearing ensued, during the course of which the Department withdrew eight of the 28 previously disallowed services. An Administrative Law Judge sustained the 20 remaining disallowed services, determined the overpayment to be $318,583.57, plus interest, and recommended that petitioner be excluded from participation in the Medicaid program for a period of five years. Petitioner thereafter commenced this CPLR article 78 proceeding seeking to set aside respondents' determination.

Petitioner, relying upon 18 NYCRR 519.18 (d),[1] initially contends that respondents' determination is based upon a finding that petitioner failed to comply with generally accepted medical practices in ordering or prescribing the disallowed ser-

1. The regulation provides, in relevant part, that "[w]here the determination is based upon an alleged failure of the provider to comply with generally accepted business, accounting, professional or medical practices or standards of health care, the department must establish the existence of such practice or standard" (18 NYCRR 519.18 [d]).

vices and, as such, respondents were required to establish the existence of the particular medical standard petitioner was alleged to have violated. The record before us, however, plainly reveals that the charges against petitioner stemmed not from the quality of care he rendered but, rather, from his demonstrated recordkeeping deficiencies (*see, Matter of Newman v Dowling*, 210 AD2d 552, 553). Accordingly, petitioner's reliance upon 18 NYCRR 519.18 (d) is misplaced. Similarly, it is important to note that the issue at the administrative hearing was not, as petitioner seems to contend, whether it was appropriate, from a medical standpoint, to utilize a particular test as a diagnostic tool in a given situation. Rather, the relevant inquiry was whether petitioner fully and properly documented the need for the specific test ordered or medication prescribed in the various patients' charts as required by the applicable regulations.

We also reject petitioner's assertion that there is not substantial evidence in the record to support the finding that petitioner engaged in "unacceptable practice[s]" within the meaning of 18 NYCRR 515.2 (b).[2] In accordance with the relevant regulations, providers may submit claims only for medically necessary services that are actually rendered (*see*, 18 NYCRR 504.3 [e]) and are required to, *inter alia*, document the medical necessity of the care, services or supplies so provided (*see*, 18 NYCRR 515.2 [b] [6]). To that end, it is well settled that "[a] provider who fails to maintain records that fully disclose the medical necessity for and the nature and extent of the medical care, services, or supplies furnished * * * is guilty of an 'unacceptable practice' * * * and may be sanctioned" (*Matter of Polanco v Commissioner of Dept. of Social Servs.*, 212 AD2d 443 [citations omitted]; *see, Matter of Keppler v New York State Dept. of Social Servs.*, 218 AD2d 887; *see also*, 18 NYCRR 515.2 [b] [1] [i] [c]).

Contrary to petitioner's assertion, the testimony offered by respondents' expert, Norman Righthand, provides the substantial evidence necessary to support the determination under review. With respect to each of the disallowed services, Right-

2. Insofar as is relevant to this proceeding, "unacceptable practice[s]" includes submitting or causing to be submitted a claim for "medical care, services or supplies provided at a frequency or in an amount not medically necessary" (18 NYCRR 515.2 [b] [1] [i] [c]) and "[f]ailing to maintain * * * records necessary to fully disclose the medical necessity for and the nature and extent of the medical care, services or supplies furnished" (18 NYCRR 515.2 [b] [6]).

hand testified, *inter alia*, that there was insufficient information and/or inadequate documents in the respective patients' charts to justify the tests ordered or the medications prescribed. To the extent that petitioner testified that he was in possession of sufficient information at the time of the various examinations to warrant the services ordered, such testimony merely presented a credibility issue for respondents to resolve (*see, Matter of Newman v Dowling*, 210 AD2d 552, 554, *supra*; *Matter of Louis v Dowling*, 203 AD2d 742, 743). Moreover, petitioner concededly failed, on more than one occasion, to document certain impressions or findings derived from such examinations in the relevant patients' charts and, as such, cannot now be heard to complain about the adequacy of his own records.

Petitioner's remaining arguments do not merit extended discussion. As to the sampling method utilized by the Department, the methodology employed was duly certified and petitioner failed to submit any competent evidence to rebut the presumption of accuracy accorded such methodology (*see*, 18 NYCRR 519.18 [g]; *Matter of Roggemann v Bane*, 206 AD2d 622, 624, *lv denied* 84 NY2d 809). Nor is there any competent evidence to support petitioner's assertion that there may have been ordered services in the universe of claims that were the product of fraud or forgery on the part of a third-party provider (*see, Matter of Roggemann v Bane, supra*). With respect to the restitution ordered, the record before us indicates that the Department reviewed its records and concluded that restitution as to the disallowed services would not result in a duplicate recovery from petitioner and any third-party provider (*see, Matter of Newman v Dowling, supra*, at 554; *Matter of Louis v Dowling, supra*, at 744). Finally, we reject petitioner's claim that the penalty imposed was excessive.

Mercure, J. P., Yesawich Jr., Peters and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.