■ In the Matter of JACQUES LAGUERRE, Petitioner, v MARY GLASS, as Commissioner of the New York State Department of Social Services, et al., Respondents. [663 NYS2d 674] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Social Services which excluded petitioner from participation in the Medicaid program for a period of two years.

Petitioner, a licensed physician, was a participating provider in the State's Medical Assistance Program (hereinafter Medicaid). After auditing 25 of petitioner's patient records, respondent Department of Social Services found that he had violated applicable regulations and notified him of its specific findings and the proposed sanction, a two-year exclusion from the Medicaid program. In response, petitioner attempted to explain or justify the alleged deficiencies, and when the Department's position remained essentially unchanged following a physician peer review, petitioner requested and was afforded an administrative hearing. In a well-considered decision, the Administrative Law Judge (hereinafter ALJ) upheld the Department's findings and conclusions with respect to the

purported violations, as well as the penalty imposed. Petitioner now seeks reversal and annulment of that determination.

Petitioner first asserts that he was denied due process of law in that the decision to exclude him from participation in the Medicaid program purportedly was based on factors other than the specific rule violations cited in the notices of agency action. This argument is unavailing, for petitioner has failed to demonstrate that he was prejudiced as a result of the alleged error (*see, Matter of Garofalo v Dowling*, 223 AD2d 770, 772). Notably, the ALJ explicitly stated that he had reached his decision without considering the testimony which petitioner contends was improperly admitted.

Nor are we persuaded that the determination was arbitrary, capricious or without substantial support in the record. Through the testimony of its physician peer reviewer, the Department established that petitioner's recordkeeping consistently failed to meet the standards outlined in the pertinent regulations. The expert testified, clearly and convincingly, as to how and why the chart entries were deficient; not only was relevant and necessary information missing from every chart examined, but in most of them the documentation of the patient's relevant medical history and presenting symptoms did not adequately demonstrate the medical necessity or appropriateness of the tests or treatments ordered. Petitioner regularly neglected to record information needed to evaluate the propriety of his decisions to renew prescriptions, such as the nature of the continuing complaint, how long the medication had been taken, and whether and to what extent it had alleviated the symptoms. And, in several instances where the chart indicated that blood or urine testing had been requested, there was no indication of exactly what laboratory tests had been ordered, whether they were actually performed, or the results thereof.

In response to these criticisms, petitioner did not deny that the information in question was missing from the charts, but insisted that his records were acceptable for a private practice and adequate to allow him to provide proper care to his patients. He also argued, and reiterates in this proceeding, that given the absence of a detailed standard (in the profession generally or in the Medicaid regulations) setting forth precisely what must be included in a patient record, it is irrational to base a finding of "unacceptable recordkeeping" on the opinion of a single physician reviewer.

We are unconvinced. Petitioner's explanations as to the grounds for his diagnoses, and his reasons for ordering tests

and treatments, only serve to underscore the peer reviewer's testimony that much of the information needed to evaluate the correctness of these decisions was not recorded in the patient's charts; indeed, petitioner admitted as much (*cf.*, *Matter of Enaw v Dowling*, 220 AD2d 942, 944, *lv denied* 87 NY2d 809). And, while the reviewer acknowledged that there is no universally accepted standard detailing every item that must be included in a patient record, he also explained that there are certain broad, minimum requirements, the necessity of which is undisputed, and, importantly, that petitioner's patient records failed in many ways to meet those rudimentary requirements, thereby creating a risk of harm to his patients.

Furthermore, it is apparent from the record as a whole that the charts in question do not comply with the explicit criteria set forth in the regulations—which specify that patient records are to include, *inter alia*, "the patient's pertinent medical history as appropriate to each visit", "a recording of any progress of a patient, including patient response to treatment", and "a description of any * * * laboratory tests * * * ordered or performed, and a notation of the results thereof" (18 NYCRR 540.7 [a] [10] [iv], [vi], [viii]; *see*, 18 NYCRR 515.2 [b] [6]). That petitioner engaged in the unacceptable practices with which he was charged is undeniable on this record (*see*, *Matter of Lala v Dowling*, 226 AD2d 933, 934; *Matter of Keppler v New York State Dept. of Social Servs.*, 218 AD2d 877, 878-879).

Nor is there any reason to disturb the ALJ's decision as to the penalty to be imposed, which was arrived at after due consideration of the relevant factors (*see*, 18 NYCRR 515.4 [b]; *Matter of Garofalo v Dowling*, *supra*, at 774). Given the ubiquity of the violations and their potential for harm to patients, the penalty is not "so disproportionate to the offense as to be shocking to one's sense of fairness" (*Matter of Garofalo v Dowling*, *supra*, at 774; *see*, *e.g.*, *Matter of Piasecki v Department of Social Servs.*, 225 AD2d 310, 312; *Matter of Koh v Perales*, 173 AD2d 477, 478, *lv denied* 78 NY2d 859).

Mikoll, J. P., Crew III, White and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.